**D. Mark KATZ, Plaintiff,**

v.

**NATIONAL ARCHIVES & RECORDS ADMINISTRATION, Defendant.**

**Civ. A. No. 92–1024 (TAF).**

United States District Court,
D. Columbia.

March 2, 1994.

Michael E. Tankersley, Theresa Amato, Alan Morrison, Public Citizen Litigation Group, Washington, DC, for plaintiff.

Richard R. Brown, Elizabeth A. Pugh, Dept. of Justice, Washington, DC, for defendant.

### MEMORANDUM OPINION

FLANNERY, District Judge.

This is an action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by which plaintiff, author D. Mark Katz, seeks to challenge a decision of the National Archives and Records Administration ("the Archives") to withhold certain autopsy records[1] of President John F. Kennedy.

### I. Procedural History

By order dated December 16, 1992, Judge Revercomb converted the Archives' motion to dismiss for failure to state a claim into a motion for summary judgment. The Court ordered the parties to file supplemental briefs addressing the effect, if any, of the President John F. Kennedy Assassination Records Collection Act of 1992 ("ARCA"), Pub.L. No. 102–526, 106 Stat. 3443 (1992), on plaintiff's FOIA claim, as well as any other issues of importance to the case. The ARCA was signed into law on October 26, 1992. Subsequent to the Court's order, the parties filed cross-motions for summary judgment and oral argument was heard before Judge Revercomb. The case was reassigned to this Court following Judge Revercomb's death and is now before the Court on the parties' cross-motions for summary judgment.

### II. Factual background

On November 22, 1963, President John F. Kennedy was assassinated in Dallas, Texas. Later that day, an autopsy was performed on the President's body at the National Naval Medical Center in Bethesda, Maryland. The autopsy photographs and a number of x-rays of the deceased president were taken by Navy personnel during the autopsy and on the same night turned over to Secret Service Agent Kellerman. The photographs and x-rays remained in the custody of the Secret Service from November 22, 1963, until April 26, 1965.

On April 22, 1965, Senator Robert F. Kennedy wrote to Vice Admiral George G. Burkley, personal physician to the president, the following letter:

[t]his will authorize you[2] to release to my custody all of the material of President Kennedy, of which you have personal knowledge, and now being held by the Secret Service.

I would appreciate it if you would accompany this material personally and turn it over for safekeeping to Mrs. Evelyn Lincoln at the National Archives.[3] I am sending a copy of this letter to Mrs. Lincoln

---

1. The parties have stipulated that the records at issue include both photographs (also known as optical photographs) and x-rays (also known as roentgenograms) taken during the autopsy performed on President Kennedy.

2. Plaintiff disputes whether Senator Kennedy had the legal authority to "authorize" the transfer of the records.

3. According to a declaration by Claudine J. Weiher, present Deputy Archivist of the United States, Mrs. Lincoln occupied a courtesy office in the National Archives building, but was not a Government employee. Weiher Decl. at ¶ 8.

with instructions that this material is not to be released to *anyone* without my written permission and approval. (emphasis in original)

On April 26, 1965, Admiral Burkley transferred the Kennedy materials to Mrs. Lincoln by letter which stated that the transfer was "in accordance with the instructions contained in Senator Kennedy's letter." Robert I. Bouck, Special Agent in Charge, in a memorandum to his chief, detailed the transfer of the autopsy materials, noting that he and Admiral Burkley "personally transported" the material "to the Archives Building where they were turned over to Mrs. Evelyn Lincoln." The materials included the autopsy photographs and x-rays now at issue in this case.

By written instrument dated October 29, 1966 ("Deed of Gift"), the executors of the estate of President Kennedy, pursuant to provisions of the Presidential Libraries Act of 1955, 44 U.S.C. § 397(e)(1) [4], donated, as historical materials, the autopsy photographs, x-rays, and other material relating to the assassination of the president.[5] Lawson B. Knott, Jr., then Administrator of General Services, accepted the donation on behalf of the United States, subject to certain restrictions on access to the materials as detailed in the Deed of Gift.

On October 31, 1966, Professor Burke Marshall, representative of the Kennedy estate, delivered to the Archives the autopsy materials outlined in the Deed of Gift. According to a memorandum detailing the delivery, the materials were in a locked footlocker that had been kept by Mrs. Lincoln. No key had been previously delivered with the footlocker. On October 31, 1966, Senator Kennedy's secretary, Miss Angela Novello, produced a key to the footlocker whereupon its contents were removed and inspected.

Plaintiff filed a FOIA request with the National Archives in January 1992, seeking access to "any and all photographs relevant to the [Kennedy] autopsy obtained Friday/Saturday, November 22/23, 1963." Plaintiff's request was denied on the grounds that the photographs had been donated to the Archives in 1966 by the executors of the Kennedy estate through the Deed of Gift, and that the Deed, rather than the FOIA, governed access to the material. The Archives denied plaintiff's subsequent appeal. Plaintiff brought this action in April of 1992.

### III. *Legal Issues*

In deciding a motion for summary judgment, the Court must consider whether there are any genuine issues of material fact. If so, then summary judgment is not appropriate. There are no material facts in dispute here; thus, only issues of law remain. *See* Fed.R.Civ.P. 56(c) (setting forth summary judgment standard).

█ The FOIA confers jurisdiction on district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." *U.S. Department of Justice v. Tax Analysts*, 492 U.S. 136, 141, 109 S.Ct. 2841, 2846, 106 L.Ed.2d 112 (1989) (citing 5 U.S.C. § 552(a)(4)(B)). The district court lacks jurisdiction to force an agency to comply with the disclosure requirements if there is no showing that an agency has (1) improperly (2) withheld (3) agency records; an agency must contravene all three requirements. *Id., citing Kissinger v. Reporters Committee for Freedom of Press*, 445 U.S. 136, 149, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980). The agency bears the burden of demonstrating that the materials sought are not "agency records" or have not been improperly withheld. *Tax Analysts*, 492 U.S.

---

**4.** At the time of the Deed of Gift, 44 U.S.C. § 397(e)(1) provided:

> The Administrator [of the General Services Administration] is authorized, whenever he deems it to be in the public interest, to accept the deposit—(1) the papers and other historical materials of any President or former President of the United States, or of any other official or former official of the Government, and other

papers relating to and contemporary with any President or former President of the United States, subject to restrictions agreeable to the Administrator as to their use.

This provision is now located at 44 U.S.C. § 2111(1).

**5.** Plaintiff disputes whether this was a lawful donation.

at 141 n. 3, 109 S.Ct. at 2846 n. 3 (citations omitted).

As plaintiff asserts, the critical question in this case is whether the autopsy photographs are "agency records" under the FOIA. If the answer is no, then the plaintiff cannot prevail in this FOIA suit. If the photographs are agency records, then the question becomes whether the Archives must disclose them under the terms of the FOIA.

For the reasons discussed below, the Court finds that the autopsy photographs are not agency records because the Archives does not have control over them. The Court, therefore, does not have jurisdiction in this FOIA case and plaintiff's suit must be dismissed. Alternatively, if the photographs are agency records, the Archives was justified in withholding them as the photographs fall within Exemption 6 of the FOIA.

### A. Agency records

The Supreme Court has articulated a two-part test for determining when records are agency records. *Tax Analysts*, 492 U.S. at 143, 109 S.Ct. at 2847. *Tax Analysts* held that in order for a record to be considered an agency record subject to the FOIA, the record must both have been created or obtained by an agency and the "agency must be in control of the requested materials at the time the FOIA request is made." *Id.*, 492 U.S. at 143–46, 109 S.Ct. at 2847–48. An agency has "control" over records if the agency came into possession of the records "in the legitimate conduct of its official duties." *Id.*

Although the Archives argues that the records were never agency records, neither party disputes that the autopsy photographs were created by Navy personnel in 1963 and retained by the Secret Service until 1965 when they were turned over to Mrs. Lincoln at the National Archives. Nor does plaintiff dispute the existence of the Deed of Gift, although he contends that it is invalid.

The Archives argues that while the photographs were created by government personnel, once they were turned over to Mrs. Lincoln, they became either personal records [6] or records of the Kennedy presidency. The autopsy records were not used or relied on by federal agencies "to perform government business," prior to their donation in 1966, the Archives argues, as Chief Justice Earl Warren's decision that the autopsy records would not be a part of the Warren Commission record demonstrates. Additionally, prior to the donation of the records through the Deed of Gift, the Kennedy family maintained custody and control of the records, as evidenced by the fact that Senator Robert Kennedy's secretary had the only key to the footlocker containing the records.

Given that the records were not agency records, the Kennedy family had the right to transfer them under the conditions outlined in the Deed of Gift, pursuant to the Presidential Libraries Act of 1955 ("PLA"), the Archives maintains. The PLA was enacted to "make possible an effective and systematic procedure for the preservation and use of presidential papers when accepted ... as gifts to the United States for the purpose of establishing an archival depository." S.Rep. 1189, 84th Cong., 1st Sess. at 1, U.S.Code Cong. & Admin.News 1955, p. 3041. It specifically permitted donations with restrictions regarding the "availability and use [of the donated materials] as may be specified in writing by the donors or depositors". *Id.* at 2 U.S.Code Cong. & Admin.News 1955, p. 3042. Thus, the Archives argues, while it has possession of the records, it only has control pursuant to the Deed of Gift.[7]

Plaintiff contends that the records were created for law enforcement purposes and cannot be equated with routine medical ex-

---

**6.** That the records are personal is also demonstrated by the way it has treated records similar to the autopsy photographs in the past, the Archives argues. For example, Presidential movement logs compiled by the Secret Service have been treated as personal materials and accepted under the Deeds of Gift of various Presidents. *See* Weiher Decl. at ¶ 18. Records of President Lyndon Johnson's gall bladder surgery at the National Naval Medical Center in Bethesda were transferred and retained by President Johnson as his "personal papers." *Id.* at ¶ 19.

**7.** The Court finds it unnecessary to address the Archives' arguments regarding *Nixon v. United States*, 978 F.2d 1269 (D.C.Cir.1992). The *Nixon* case does not address the issue before the Court: whether the autopsy records are agency records.

aminations or family photographs.[8] The Archives' attempts to characterize these records as personal is implausible, plaintiff asserts, because such a characterization would render Exemption 6 in FOIA, which creates an exemption for medical records, superfluous. In addition, the records were not created solely for the use and convenience of the former President, nor did they belong to him or any other private party, plaintiff argues, citing *Bureau of Nat'l Affairs, Inc. v. Department of Justice*, 742 F.2d 1484, 1486 (D.C.Cir.1984) (appointment materials created solely for an individual's convenience, containing a mix of personal and business entries, and that may be disposed of at the individual's discretion, are not "agency records" under the FOIA).

Moreover, plaintiff contends, the PLA is irrelevant because the autopsy records were never properly transferred to the Kennedy family pursuant to the 1943 Disposal of Records Act; thus the Kennedy family never had "ownership" of the records, which would have allowed them to donate the records to the Archives. *See* 44 U.S.C. §§ 3301–3314. The Disposal of Records Act provides that records of the United States Government "may not be alienated or destroyed" except by the procedures outlined in the Act. *Id.* at § 3314. The term "records" includes

> all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business ...

*Id.* at § 3301. Because the Act's procedures were not followed, the records retained their original status as agency or government records and the unauthorized transfer to Mrs. Lincoln and the subsequent deed did not surrender the United States' rights to the records, plaintiff claims.[9] Therefore, as they are now in the possession of the Archives and no valid restrictions on the Archives' control of the records exist, plaintiff contends, the records are subject to the terms of the FOIA.

Ultimately, however, it is irrelevant whether the autopsy records were personal, presidential or agency records prior to their transfer to Mrs. Lincoln and their subsequent donation to the Archives. Assuming *arguendo* that the Disposal of Records Act applied and thus the records were never properly alienated, plaintiff's FOIA suit still must fail. Once the records were turned over, rightfully or wrongfully, to a non-government employee, Mrs. Lincoln, the records left government possession and control. The government next regained possession, but not control, of the records through the Deed of Gift. Under the *Kissinger* case, plaintiff's efforts to access the records through the FOIA is barred.

In *Kissinger*, plaintiffs sought access under the FOIA to notes and transcripts of telephone conversations created while Kissinger was Secretary of State, notes which Kissinger ultimately donated to the Library of Congress under a deed containing certain restrictions on access. *Kissinger v. Reporters Committee for Freedom of Press*, 445 U.S. 136, 139–43, 100 S.Ct. 960, 963–64, 63 L.Ed.2d 267 (1980). The Supreme Court held that the plaintiff could not obtain access to the records requested because they were not in the possession of an "agency" covered by the FOIA at the time of the request. The Court did not decide whether the telephone notes were agency records; assuming *arguendo* that the notes were agency records, the FOIA plaintiffs were not entitled to relief. *Id.*, 445 U.S. at 145–49, 100 S.Ct. at 966–67. Through the FOIA, plaintiffs essentially were trying to enforce the requirements of the Federal Records and Disposal Acts by seeking the return of the records to

---

**8.** Plaintiff notes that the FBI recognizes that the photographs of Lee Harvey Oswald's autopsy are agency records and provides them, for a fee, to requesters. Plaintiff's analogy to the Oswald autopsy photographs fails, the Archives argues, because those photographs are not of the Chief Executive nor did the FBI acquire the photographs under a Deed of Gift.

**9.** The Archives concedes that the procedures outlined in the Disposal of Records Act were not followed, but argues that the autopsy records were not subject to the Act because both the government and the Kennedy family treated these records as personal records of the President from their creation.

agency custody. *Id.*, 445 U.S. at 147, 100 S.Ct. at 967. The Court held that this effort was barred because the FOIA cannot be used to recover records wrongfully removed from government custody. Moreover, the two records acts do not provide a private right of action. *Id.*, 445 U.S. at 147, 100 S.Ct. at 967. Thus, the Court found that the State Department had neither the possession nor control of the documents at the time the FOIA requests were received; Kissinger and the Library of Congress as his donee were holding the documents under a claim of right. *Id.*, 445 U.S. at 155, 100 S.Ct. at 971.

Plaintiff argues that *Kissinger* is inapposite because the case at bar is not about recovering wrongfully removed records that are no longer in the possession of an agency. The Archives is an agency covered by the FOIA and it is already in possession of the records, plaintiff argues; no retrieval is necessary. Likewise, plaintiff contends, if the Kissinger materials had been "donated" to the Archives, the Archives would have had to disclose them under the FOIA. *See McGehee v. CIA,* 697 F.2d 1095, 1107 (D.C.Cir.) (transfer of documents from one agency covered by FOIA to another does not alter documents' status as agency records), *vacated in part and aff'd in part,* 711 F.2d 1076 (D.C.Cir.1983).

Plaintiff also asserts that the Disposal of Records Act is not relevant as providing a private right of action but for demonstrating that the Archives' defense to this FOIA action—that the Kennedy family retains control of the records—is contrary to the law governing the disposal of government records. Any action by a government official is necessarily unauthorized because it did not follow the Disposal Act, according to the plaintiff; thus, a private party's assertion of possession and control does not extinguish or convey the government's rights in its own records. These actions cannot be given effect and the Deed is invalid, plaintiff argues, citing *Office of Personnel Management v. Richmond,* 496 U.S. 414, 429–34, 110 S.Ct.

2465, 2474–76, 110 L.Ed.2d 387 (1990) (no estoppel against Government officials who frustrate legislative intent). In sum, plaintiff contends, because the transfer of records to Mrs. Lincoln was improper, the Deed is invalid as well; the records, therefore, never left the possession of the government.

What plaintiff's argument ignores is the break in the chain of government custody when Admiral Burkley transferred the documents to Mrs. Lincoln, who was not a government employee. Even assuming this transfer was improper,[10] the government did nothing to retrieve those records. Once the Deed of Gift was signed and the records donated, the Archives gained possession of the records, but only pursuant to the conditions in the Deed. The government again never attempted to retrieve the records in order to assert control over them. The records physically reside within the confines of the Archives, which is subject to the FOIA; however, this residence is only by virtue of the Deed of Gift. *See Kissinger,* 445 U.S. at 156, 100 S.Ct. at 972 (declining to hold that the physical location of records renders them "agency records"). Under these circumstances, then, the Archives does not have control over the records absent any grant of control from the Deed of Gift; therefore, the autopsy records are not agency records. *See Tax Analysts,* 492 U.S. at 142–46, 109 S.Ct. at 2847–48 (agency must be in control of the requested material when FOIA request is made).

The passage of the President John F. Kennedy Assassination Records Collection Act of 1992 ("ARCA"), Pub.L. No. 102–526, 106 Stat. 3443 (1992), while not deciding the issue, also supports the conclusion that the autopsy records are not agency records because the Archives does not control them.

The express purpose of the ARCA is to establish a comprehensive collection of assassination records for public access at the National Archives. Pub.L. No. 102–526, § 2(b).

---

**10.** Plaintiff's reliance on the *Richmond* case is misplaced. The *Richmond* Court found that there can be no estoppel against the Government by a claimant seeking public funds. *Richmond,* 496 U.S. at 432, 110 S.Ct. at 2476. However, the Court did not decide whether "there are any extreme circumstances that might support estoppel in a case not involving payment from the Treasury". *Id.* This Court also does not decide that question.

The ARCA provides a comprehensive definition of assassination records:

> "[a]ssassination record" means a record that is related to the assassination of President John F. Kennedy, that was created or made available for use by, obtained by, or otherwise came into the possession of—
>
> .    .    .    .    .
>
> (G) the National Archives and Records Administration;
>
> .    .    .    .    .
>
> but does not include the autopsy records *donated by the Kennedy family to the National Archives pursuant to a deed of gift regulating access to those records,* or copies and reproductions made from such records.

*Id.* at § 3(2) (emphasis added).

The Archives argues that the ARCA demonstrates that the Deed of Gift, rather than the FOIA, serves as the exclusive means of access to the autopsy records; in essence, the ARCA validates the Deed of Gift with language that honors the provisions of the Deed. The Archives cites to the legislative history of the ARCA, where Congress approved of the way the Deed of Gift regulated access to the autopsy records. *See e.g.,* S.Rep. No. 102–328, 102d Cong., 2d Sess. at 22 (1992), U.S.Code Cong. & Admin.News 1992, pp. 2965, 2971 ("public access has been granted judiciously and fairly ... this practice can and should continue as set forth by the terms of the deed").

Furthermore, the Archives argues, while the ARCA does preserve the right to access information under the FOIA, that provision must be read in context with the remainder of ARCA. *See DAE Corp. v. Engeleiter,* 958 F.2d 436, 439 (D.C.Cir.1992) (cardinal rule of statutory construction that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context.) (citations omitted). The Archives contends that it would be inconsistent for the ARCA to exclude the autopsy records from its disclosure requirements, to specifically acknowledge the Deed of Gift, but to permit

access to the very same records under the FOIA. Therefore, the Archives argues, the ARCA supports its contention that the Deed of Gift, made pursuant to the PLA, displaced the FOIA regarding access to the autopsy records.

Plaintiff points out, however, that the plain language of the ARCA says nothing about whether the records are agency, personal, or presidential records, nor about the validity of the Deed of Gift. Moreover, plaintiff contends, interpreting the ARCA as validating the Deed of Gift would construe it as implicitly repealing not only the 1943 Disposal of Records Act by circumventing that Act's requirements, but also the FOIA with respect to the autopsy records by reading the ARCA as prescriptive, not descriptive. Absent a clear statement of congressional intent, the ARCA should not be read to change the ownership of the autopsy records or to effect the implied repeal of two prior statutes, plaintiff argues.

Plaintiff is correct that the ARCA does not address whether the autopsy records are agency records, nor does the ARCA repeal the FOIA. The Court also recognizes that Congress' "approval" of the Deed in no way changes the fact that the Court must determine whether the autopsy records are agency records. However, by its language and legislative history, the ARCA does support the government's argument that the Deed of Gift controls access to the records. The ARCA respects the terms of the Deed of Gift by exempting from its breadth those records donated pursuant to the Deed. By doing so, the ARCA implicitly puts Congress' stamp of approval upon the Deed. Thus, while the ARCA does not provide an answer as to whether the autopsy records are agency records, it does demonstrate that Congress respected the terms of the Deed of Gift when enacting the statute.

In summary, the autopsy records at issue here are not agency records subject to the FOIA. Although the records physically reside in the Archives, the Archives does not have the requisite control over them because of the Deed of Gift.[11] The Deed was entered

---

11. The Court is mindful of the distinction set forth in *Tax Analysts* that the control inquiry

focuses not on the agency's power to alter the contents of the materials it receives but on the

into between the Kennedy estate and the Archives pursuant to the provisions of the Presidential Libraries Act. In addition, the ARCA implicitly respects the validity of the Deed. Moreover, even if the provisions of the Disposal of Records Act were not followed and the Deed is invalid, plaintiff is barred from retrieving the records through this FOIA suit. *Kissinger,* 445 U.S. at 147, 100 S.Ct. at 967.

### B. *Exemption 6*

■ In the alternative, the Archives argues that even if the Court decides that the autopsy records are agency records subject to the FOIA, they are exempt from disclosure pursuant to Exemption 6, 5 U.S.C. § 552(b)(6). An agency must disclose agency records under the FOIA "unless they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b)." *Tax Analysts,* 492 U.S. at 150, 109 S.Ct. at 2851, quoting *United States Dept. of Justice v. Julian,* 486 U.S. 1, 8, 108 S.Ct. 1606, 1611, 100 L.Ed.2d 1 (1988). Exemption 6 exempts from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The exemption requires the Court to balance the "individual's right of privacy" against the basic policy of opening "agency action to the light of public scrutiny." *U.S. Department of State v. Ray,* 502 U.S. 164, ——, 112 S.Ct. 541, 548, 116 L.Ed.2d 526 (1991) (citations omitted). The agency bears the burden of justifying the withholding of any requested documents. *Id.,* 502 U.S. at ——, 112 S.Ct. at 547 (citations omitted).

■ Plaintiff does not dispute that the autopsy records qualify as "similar files" or that the Kennedy family has a privacy interest in the records, limited, however, to preventing public disclosure that would cause clearly unwarranted anguish or grief. Likewise, the Archives does not dispute that

there is a public interest in the original autopsy photographs. The disagreement lies in how the Court should determine the balancing test.

Turning first to the x-rays, plaintiff argues that disclosure would not lead to anguish for the Kennedy family. The Archives has conceded that the x-rays, which show only the osseous, or bone, structure, are not.graphic. Three of plaintiff's declarants, all medical professionals, declared that release of the autopsy x-rays here would not cause any invasion of privacy. In addition, plaintiff notes, the Archives has admitted that the government has published and sold copies of the x-rays as exhibits to the House Select Committee on Assassinations ("HSCA") Report. This repeated prior publication diminishes or extinguishes privacy interests that might otherwise prevent disclosure under the FOIA, plaintiff contends.

Moreover, plaintiff argues, the public interest to be gained from access to the x-rays outweighs the minimal privacy interests. Six of plaintiff's declarants set forth the public interest to be gained from allowing access, including the benefits resulting from a three-dimensional reconstruction analysis of the x-rays which has not been performed. Two of the declarants who have viewed the original x-rays assert that the public interest in disclosure outweighs any privacy interests at stake. Thus, plaintiff contends, the x-rays must be released as the public interest outweighs the privacy interests in non-disclosure.[12]

The Archives argues that because the x-rays convey information that "applies to an individual," they satisfy the threshold for Exemption 6. *See New York Times Co., Inc. v. NASA,* 920 F.2d 1002, 1006 (D.C.Cir.1990) (*en banc*) (information need not be intimate to satisfy threshold). Conceding that the x-rays are less graphic than the autopsy photographs, the Archives contends that, never-

---

agency's "possession of the requested materials". *Tax Analysts,* 492 U.S. at 146, 109 S.Ct. at 2849. As discussed above, the Archives' "possession" of the records is controlled by the Deed.

12. Plaintiff Mark Katz seeks access to the autopsy records for a "photoanalysis of, and in further-

ance of my research and writing on, the assassination of President John F. Kennedy." Katz Decl. at ¶ 2. He further states that it is "critically important to the integrity of the photoanalysis that I seek to publish that I am able to verify the authenticity of the photographs used in the photoanalysis." *Id.* at ¶ 5.

theless, the x-rays fully depict the results of a high-powered rifle shot to the head. In addition, Professor Marshall declared that release of the x-rays would "cause pain and anguish to the members of President Kennedy's immediate family." Thus, the Archives argues, regardless of whether the x-ray photographs depict osseous structure or flesh and blood, they should be exempt from disclosure as disclosure would constitute a "clearly unwarranted invasion of personal privacy".

Finally, the Archives points out, copies of certain x-rays that plaintiff has obtained from the National Archives are available, according to the Chief of the Archival Programs Branch, only because they were published as exhibits by the HSCA. These exhibits do not include the originals of the autopsy related materials, but instead consist, among others, of black and white photographs of x-rays.[13] More importantly, according to the Archives, the release of these copies by HSCA was contrary to the wishes of the Kennedy family and the ARCA has set forth affirmative steps to recover these copies. *See* S.Rep. No. 102–328, 102d Cong., 2d Sess. at 22, U.S.Code Cong. & Admin.News 1992, p. 2971 ("It is intended that the Kennedy autopsy records contained in the HSCA records should be restored to the original collection of such records in the National Archives and treated as Kennedy autopsy records which are exempt from disclosure under the Act.").

Recognizing that different considerations apply to the optical photographs, plaintiff maintains, however, that the Kennedy family's privacy interests in these photographs have also been diminished by prior publication and dissemination. Plaintiff's declarant

describes two known sets of photographs in the private possession of researchers[14], which have been published in various publications and media. Denying access to these records under the FOIA will not serve to prevent anguish from disclosure because the photographs are already in the public domain, plaintiff contends, citing *Department of State v. Washington Post Co.,* 456 U.S. 595, 603 n. 5, 102 S.Ct. 1957, 1962 n. 5, 72 L.Ed.2d 358 (1982) ("public nature of information may be a reason to conclude under all the circumstances of a given case, that the release of such information would not constitute a 'clearly unwarranted invasion of personal privacy' "). Moreover, plaintiff contends, the countervailing public interest in disclosure of the records is overwhelming, as his six declarants state.[15] Finally, the Department of Justice has concluded that the public interest in the autopsy records of Lee Harvey Oswald outweighs any privacy interest under Exemption 6; that conclusion, plaintiff argues, should apply here as well.

As with the x-rays, the Archives asserts, the Kennedy family has a strong privacy interest to be protected from suffering further grief and unnecessary harassment, as explained in the declaration of Professor Marshall. Professor Marshall describes the photographs as "graphic and explicit," and states that any types of public display of the photographs "are certain to cause extreme anguish to the members of the Kennedy family." This privacy interest, the Archives argues, outweighs the minimal public interest in disclosing records that have already been reviewed by a number of government entities and private researchers pursuant to the ac-

---

**13.** Plaintiff's declarant, Dr. Mantik, noted in his declaration that the copies which are available from the Archives are "third, and probably fourth generation copies of the original." The Archives argues that Dr. Mantik's statement that "it is abundantly clear that significant information is lost in going from the original x-ray to a fourth generation copy" supports the conclusion that the original x-rays would be far more precise and far more upsetting than the copies of the originals that are presently available.

**14.** These are known as the "Fox" and the "Groden" sets.

**15.** Plaintiff claims that access to the photographs will: (1) allow the public to assess the government's conduct of the autopsy; (2) allow the public to examine the validity of the conclusions reached by the Warren Commission, and by the HSCA; (3) allow the public to attempt new and different analyses on the records that have never been performed by government-sponsored investigations; and (4) may shed light on whether the government's medical evidence has been altered or forged. *See* Plaintiff's cross-motion for summary judgment at 18.

cess provisions of the Deed of Gift.[16] *See e.g.,* S.Rep. No. 102–328, 102d Cong., 2d Sess., at 21–22, U.S.Code Cong. & Admin.News 1992, p. 2970 ("Committee believes that there is a compelling justification for protecting the privacy of the Kennedy family from the unwarranted intrusion that would be raised by public disclosure of the autopsy records conveyed by the deed.").

In addition, the Archives argues, the photographs that have been disseminated to the public apparently have come from unauthorized sets of copies. Plaintiff contends that this dissemination shows that there would only be a marginal increase, if any, in anguish resulting from release of "authorized" copies. According to a declaration of Dr. John K. Lattimer, however, the original autopsy photographs, which include "many full-color photographs of President Kennedy's body and exploded head," are far more shocking and lurid than the unauthorized versions which "have thus far been reproduced in the various media forms." Lattimer Decl. at ¶ 8. Dr. Lattimer further states that release of these photographs would have a more "devastating effect" on the Kennedy family than those unauthorized photographs already produced. *Id.* at ¶ 9. A supplemental declaration of Professor Marshall also states that the publication of these unauthorized photos has been "profoundly upsetting" to the Kennedy family, and the release of any additional materials "will only magnify the grief and suffering and add to the invasion of this family's privacy." Marshall Decl. at ¶ 4. This continued anguish, the Archives contends, is precisely the type of privacy interest that Exemption 6 of the FOIA protects.

Plaintiff contends, nevertheless, that the Archives has not demonstrated how the authorized versions of the photographs differ from those which have been widely circulated. Two of plaintiff's declarants, Dr. Cyril H. Wecht and Dr. Louis P. Kartsonis, have examined the original photographs and contend that disclosure of these already widely disseminated photographs will not constitute an invasion of privacy. Dr. Wecht declares that the original records "are substantially similar to those that have already been reproduced or published by either the government or private individuals." Wecht Decl. at ¶ 2. Dr. Wecht also disagrees with Dr. Lattimer that the original photographs are "far more shocking and lurid" than those printed in books he has reviewed.

Even if the Archives' version of the records are "more shocking and lurid," plaintiff argues, the Archives has failed to rebut the relevance of prior publication in minimizing the privacy interests of the Kennedy family and has failed to discount the public interest in being able to compare the differences between the unauthorized and authorized sets. Therefore, plaintiff argues, the Archives must make a particularized showing that each original record is somehow materially different from the unauthorized copies and must also demonstrate how a "clearly unwarranted" invasion of privacy will occur by the release of each photograph.

In reviewing the evidence presented by the parties, the Court finds that the Kennedy family has a clear privacy interest in preventing the disclosure of both the x-rays and the optical photographs taken during President Kennedy's autopsy. There is also a public interest in releasing the autopsy photographs, which is acknowledged, though minimized, by the Archives. Plaintiff is correct that access under the FOIA is not determined by whether the records sought will provide definitive answers to public debate, nor whether the records have been "judiciously" released to other requesters. However, there can be no mistaking that the Kennedy family has been traumatized by the prior publication of the unauthorized records and that further release of the autopsy materials will cause additional anguish. Moreover, while the Court, and not Congress, must perform the Exemption 6 balancing test, it is also relevant that the ARCA respected the Kennedy family's privacy interest in excluding the autopsy records from the scope of the act.

Therefore, in balancing the two interests, the Court finds that allowing access to the autopsy photographs would constitute a

---

16. Access to the autopsy materials has been granted to various government entities as well as to at least seven different private researchers under the provisions of the Deed of Gift.

clearly unwarranted invasion of the Kennedy family's privacy. Thus, holding in the alternative, the Court finds that the Archives was justified in withholding the autopsy records under Exemption 6 of the FOIA.

## IV. *Conclusion*

In summary, the Court finds that the autopsy photographs are not agency records under the FOIA for the reasons stated above. Therefore, the Court does not have jurisdiction in this FOIA case and plaintiff's suit must be dismissed. Holding in the alternative, the Court finds that if the photographs are agency records, the Archives was justified in withholding them under Exemption 6 of the FOIA. An appropriate order is filed herewith.

### *ORDER*

This matter came before the Court on the parties' cross-motions for summary judgment. Upon consideration of the parties' motions, the oppositions, and the replies thereto, and in accordance with the Memorandum Opinion filed herewith, it is this 2nd day of March, 1994, hereby

ORDERED that defendant's motion for summary judgment is granted and it is therefore

ORDERED that plaintiff's case is dismissed.