Robert E. HEGGESTAD, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

Civ. No. 98–0053.

United States District Court,
District of Columbia.

June 30, 2000.

Robert Eldon Heggestad, Heggestad & Weiss, P.C., Washington, DC, pro se.

Pat S. Genis, Melissa Anemojanis, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

## MEMORANDUM OPINION

HOGAN, District Judge.

This case is brought by Robert Heggestad ("plaintiff" or "Heggestad") against the United States Department of Justice ("defendant" or "DOJ") to compel the DOJ to disclose documents relating to the decision to prosecute in *United States v. Moon,* et

*al.* pursuant to the Freedom of Information Act ("FOIA"). Defendant filed a Motion for Summary Judgment on the ground that the DOJ disclosed to plaintiff all information which is not exempt under the FOIA. Upon careful consideration of the briefs and the entire record herein, this Court finds no evidence that defendant improperly withheld information under the enumerated exemptions of the FOIA.[1] The Court also finds no basis to grant plaintiff's request for further discovery in this case. Accordingly, the Court will grant defendant's Motion for Summary Judgment.

## I. BACKGROUND

This is a lawsuit under the FOIA, 5 U.S.C. § 552, in which plaintiff is seeking documents relating to the criminal investigation of the Reverend Sun Myung Moon ("Reverend Moon") and Mr. Takeru Kamiyama ("Mr. Kamiyama") for alleged violations of the federal tax laws.

By a letter dated March 7, 1997, Heggestad requested all documents relating to the decision to prosecute in the case of *United States v. Moon, et al.,* including but not limited to five documents specifically listed in the request: (1) the Tax Division's initial memorandum dated August 4, 1981, recommending that prosecution be declined; (2) the memorandum dated August 17, 1981, prepared by a Senior Reviewer in the Criminal Section of the Tax Division concurring with the August 4, 1981 memorandum; (3) the August 20, 1981 decision of the Chief of the Tax Division's Criminal Section that prosecution should be declined; (4) the August 21, 1981 recommendation by Mr. Martin Flumenbaum, Assistant U.S. Attorney for the Southern District of New York, to Acting Assistant Deputy Attorney General for the Tax Division that Mr. Kamiyama and Re-

verend Moon be prosecuted; and (5) the September 10, 1981 memorandum decision of the Acting Deputy Assistant Attorney General for the Tax Division, Mr. Gilbert Andrews ("Andrews"), approving criminal proceedings. Complaint ¶ 5; Ferrel Decl. ¶ 3. On August 27, 1997, the DOJ responded to plaintiff's request by releasing three documents in full, withholding five documents in part, and withholding two documents in their entirety. Complaint ¶ 6; Ferrel Decl. ¶ 14. These documents were withheld on the grounds that the materials were exempt from disclosure under the FOIA pursuant to Exemption 3, in conjunction with Fed.R.Civ.P. 6(e) and 26 U.S.C. § 6103, relating to confidential grand jury information; Exemption 5, in conjunction with the attorney work product and deliberative process privileges; and Exemption 7(C) relating to the unwarranted invasion of the privacy of third parties. Complaint, Attachment 2 (8/27/97 letter from Ferrel to plaintiff).

On November 14, 1997, plaintiff appealed the denial of his request and cited three documents allegedly falling within the scope of the request that had not been produced: (1) the August 17, 1981 Reviewer's concurrence in the August 4, 1981 recommendation that prosecution should be declined; (2) the August 20, 1981 memorandum opinion by the Chief of the Criminal Section, Stanley Krysa ("Krysa"), that prosecution should be declined; and (3) an August 9, 1984 letter from the Assistant Attorney General to Senator Orin Hatch regarding the Tax Division's subsequent authorization to prosecute Reverend Moon and Mr. Kamiyama. The August 9, 1984 letter to Senator Orin Hatch ("Hatch letter") was not construed by the DOJ as falling within plaintiff's March 7, 1997 FOIA request. Ferrel Decl. ¶ 3. Plaintiff filed another FOIA request on May 4, 1998

---

[1]. Although it was not raised by the plaintiff, the Court notes that it also finds no evidence that defendant conducted its search for responsive documents in bad faith.

for this letter. *Id.* On September 11, 1998, the Hatch letter was released in part to plaintiff. Ferrel Supp. Decl. ¶ 5.

On January 9, 1998, plaintiff filed the instant action to compel production of the withheld agency records. On July 23, 1998, plaintiff submitted an additional FOIA request to the DOJ along with a power of attorney for Reverend Moon. Ferrel Supp. Decl. ¶ 2. Because the July 23, 1998 FOIA request sought several of the same documents at issue in this lawsuit and provided a power of attorney for the Reverend Moon, the parties agreed to stay this proceeding so that defendant could process the July 23, 1998 request in an attempt to narrow the issues for the Court. Pursuant to a Consent Order entered by the Court on September 10, 1998, this matter was stayed pending the DOJ's processing of the new FOIA request.[2]

On September 15, 1998, the DOJ responded to plaintiff's July 23, 1998 FOIA request. Ferrel Supp. Dec. ¶ 3. The DOJ released portions of three documents which contain tax return information relating to Reverend Moon; this information was previously withheld pursuant to 26 U.S.C. § 1603 in conjunction with FOIA Exemption 3, but was released as a result of the power of attorney provided for Reverend Moon. Ferrel Supp. Dec. ¶ 4. Therefore, the lawsuit is moot with respect to page 7 of document 1, the released portions of pages 2 and 3 of document 2, and the released portions of pages 2 through 5 of document 10.

## II. APPLICABLE LEGAL STANDARD

### A. The Freedom of Information Act

■ Plaintiff's claims arise under the FOIA, 5 U.S.C. § 552. The FOIA pro-vides a rule of general disclosure by government agencies upon request. Mandatory disclosure enables the public to gain access to government information so that it can review the government's performance of its statutory duties, thereby promoting governmental honesty. *United States Dep't of Defense v. Fed. Labor Relations Auth.,* 510 U.S. 487, 495–96, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994). Accordingly, district courts have the authority to order the production of agency records where the agency improperly withholds their records. *United States Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 141, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989); *see also Katz v. Nat'l Archives & Records Admin.,* 862 F.Supp. 476, 478 (D.D.C. 1994). However, an agency may withhold agency records which fall under one of the nine enumerated exemptions under the FOIA. *See* 5 U.S.C. § 552(b). The government has the burden of justifying its withholding of documents pursuant to one or more of these exemptions. *Katz,* 862 F.Supp. at 478.

### B. Summary Judgment

■ Under the FOIA, a district court conducts de novo review to determine whether the government may properly withhold the requested records under any of FOIA's nine exemptions. 5 U.S.C. §§ 552(a)(4)(B) & (b)(1)–(9). To sustain its burden of justifying nondisclosure of records under the FOIA, the government must submit affidavits or declarations describing the withheld material with reasonable specificity and the grounds for exemption. *PHE, Inc. v. Dept. of Justice,* 983 F.2d 248, 250 (D.C.Cir.1993). In order to withstand a motion for summary judgment, the opposing party must set forth

2. This case was transferred to Judge Richard W. Roberts on July 29, 1998, although this Court continued to handle emergency matters until Judge Roberts took the oath of office in October of 1998. The case was subsequently reassigned back to this Court by direction of the calendar committee on May 24, 2000.

specific facts showing that there is a genuine issue of material fact in dispute. Fed. R.Civ.P. 56(e). Where the pleadings and affidavits show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *See id.; see also Alyeska Pipeline Serv. Co. v. Envtl. Protection Agency*, 856 F.2d 309, 313–14 (D.C.Cir.1988).

## III. DISCUSSION

The defendant is withholding two documents in full and five documents in part, based on Exemption 3 in conjunction with Fed.R.Crim.P. 6(e), Exemption 5 in conjunction with the attorney work-product and deliberative process privileges, and Exemption 7(C) of the FOIA.

### A. Exemption 3

Portions of documents 1, 2, 6, and 10 were withheld from release pursuant to FOIA Exemption 3 in conjunction with Fed.R.Crim.P. 6(e). FOIA Exemption 3 provides that the disclosure provisions of the FOIA do not apply to matters that are specifically exempted from disclosure by statute. Rule 6(e) of the Federal Rules of Criminal Procedure has been held by the Court of Appeals for this Circuit to constitute a statute within the meaning of FOIA Exemption 3. *Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.*, 656 F.2d 856 (D.C.Cir.1981). In *Fund for Constitutional Gov't*, the Court determined that information which would reveal matters occurring before the grand jury or elucidate the inner workings of the grand jury was exempt from disclosure under the FOIA. *Id.* at 869–70. Both the District Court and the Court of Appeals upheld the withholding of information

naming or identifying grand jury witnesses, quoting or summarizing grand jury testimony, evaluating testimony, discussing the scope, focus, and direction of the grand jury investigations, and identifying documents considered by the grand jury and conclusions reached as a result of the grand jury investigations. *Id.* at 869.

■ In this case, the prosecution recommendations at issue refer to or summarize testimony of grand jury witnesses or evidence presented to the grand jury. Ferrel Decl. ¶ 12. Release of these withheld materials would not only reveal the scope and direction of the grand jury's investigation but would also identify and describe specific evidence considered by the grand jury.[3] *Id.* Therefore, this material was properly withheld pursuant to Exemption 3.

### B. Exemption 5

■ FOIA Exemption 5 protects "interagency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption has been construed to encompass documents normally privileged in the civil discovery context. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Thus, Exemption 5 has been held to include documents which are protected by the deliberative process privilege, *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C.Cir. 1982), as well as documents which constitute attorney work-product. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C.Cir.1980).

■ The deliberative process privilege is designed to protect the quality of

---

**3.** Defendant also withheld this information to protect the names of the grand jury witnesses and identifying characteristics of these witnesses. Ferrel Decl. ¶ 13. Protecting the secrecy of these names is important to protect these witnesses from possible retaliation and to encourage other witnesses to testify before future grand juries. *Id.* ¶ 12.

agency decision-making from injury. *NLRB*, 421 U.S. at 151, 95 S.Ct. 1504. This privilege protects not only particular documents, but also the integrity of the deliberative process itself.[4] Documents created by an agency as part of the deliberative process which precedes its final decision are exempt from disclosure under the FOIA. *Russell*, 682 F.2d at 1047–48. According to the United States Court of Appeals for the District of Columbia:

> Exemption (b)(5) shields from the mandatory disclosure requirement of the FOIA the deliberative process that precedes most decisions of government agencies ... Thus, the exemption protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency.

*Id.; see also Williams v. U.S. Dep't of Justice*, 556 F.Supp. 63, 66 (D.D.C.1982). For a document to be covered by the deliberative process privilege, two requirements must be satisfied. First, it must be predecisional, that is, "antecedent to the adoption of agency policy." *Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978) (en banc), overruled in part on other grounds, *Crooker v. Bureau of Alcohol, Tobacco, and Firearms*, 670 F.2d 1051 (D.C.Cir.1981) (en banc). To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process." *Coastal States Gas Corp.*, 617 F.2d at 868.

Second, the document must be deliberative in nature, *i.e.*, it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C.Cir.1975). Deliberative documents frequently consist of "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB*, 421 U.S. at 150, 95 S.Ct. 1504.

Documents covered by the deliberative process privilege are often also protected by the attorney work-product privilege. The attorney work-product privilege protects material gathered and memoranda prepared by an attorney in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The primary purpose of this privilege is to protect against disclosure the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation. *See* Fed.R.Civ.P. 26(b)(3). However, it is well established that the

---

**4.** The purpose of the deliberative process privilege is to protect the agencies from having to make their decisions in a fishbowl, thereby assuring that subordinates within an agency feel free to provide their uninhibited opinions and recommendations without fear of later being subject to public criticism or ridicule; to prevent premature disclosure of policies before they have been finally formulated or adopted by the agency; and to protect against misleading the public or confusing the issues by the dissemination of documents suggesting the reasons or rationales for a course of action which were not the ultimate reasons for the agency's decision. *Coastal States Gas Corp.*, 617 F.2d at 866; *see also Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114 (9th Cir.1988) ("Exemption 5 was created to prevent the disruption of a free flow of ideas, opinions, advice, and frank discussions within agencies concerning their policies and programs. In furtherance of this objective, the courts have allowed the government to withhold memoranda containing advice, opinions, recommendations, and subjective analysis.") (quoting *Julian v. U.S. Dep't of Justice*, 806 F.2d 1411, 1417 (9th Cir.1986), *aff'd* 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988)).

privilege covers factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories. *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C.Cir.1997).

■ A document may be "prepared in anticipation of litigation" so as to qualify for the attorney work-product privilege even without a case already docketed or where the agency is unable to identify the specific claim to which the document relates. *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C.Cir.1992) (the privilege "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated.") The primary purpose for the creation of the document is the critical issue. *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C.Cir.1987). Thus, the privilege extends to documents that "address the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome," even where the identity of the prospective litigation opponent is unknown. *Id.* at 127.

In this case, the defendant has withheld four categories of materials on the basis of the deliberative process and attorney work-product privileges: portions of the IRS and United States Attorney prosecution recommendations (documents 1, 6, and 10); most of the Tax Division prosecution memoranda (documents 2, 3, and 4); parts of a memorandum of a meeting regarding whether the prosecution decision should be reviewed by higher authority in the Department of Justice (document 9), and portions of the August 9, 1984 letter from Robert A. McConnell to Senator Orrin G. Hatch. Ferrel Decl. ¶ 19; Third Ferrel Decl. ¶ 2 and Exhibit A thereto. The Court will first address the validity of withholding the prosecution memoranda and will then resolve the issues raised by the Hatch letter.

### 1. The Prosecution Memoranda (Documents 1, 2, 3, 4, 6, 9, and 10)

Defendant claims that portions of documents 1, 2, 6, 9, and 10 and the entirety of documents 3 and 4 are protected by the deliberative process privilege because they were created as part of the give-and-take process as the decision of whether to prosecute moved up the line of authority within the Department of Justice. Def. Mot. at 17. Moreover, defendant contends that these documents are also protected by the attorney work-product privilege because they were prepared by attorneys to aid in their determination of whether to authorize prosecution of the targets of their criminal investigation. *Id.* at 19. Plaintiff questions both whether the withheld portions of the documents were pre-decisional and whether they were created in anticipation of litigation.

The determining issue here is what constituted the final decision in this case: the decision of the Chief of the Criminal Section of the Tax Division, Krysa, to decline prosecution; or the decision made by the Acting Deputy Assistant Attorney General in the Tax Division, Andrews, authorizing prosecution. If Andrews made the final decision, then all documents prepared prior to the adoption of this decision are exempt from disclosure, because they are prepared by people without final decision-making authority, they were prepared prior to the adoption of a final decision, and they are part of the give-and-take of the decision-making process. On the other hand, if Krysa made the final decision, then both his decision and Andrews' subsequent decision would likely be outside the protection of Exemption 5.

Plaintiff asserts that the prosecution memoranda at issue in this case are final opinions analogous to the Appeals and Advice Memoranda discussed in *NLRB*, 421 U.S. at 132, 95 S.Ct. 1504. In *NLRB*, the

Court determined that memoranda in which the General Counsel declined to file a complaint constituted the final opinions of the General Counsel, because the General Counsel's decision to dismiss the charge constituted a final disposition of the case and no complaint would be filed. In this case, the prosecution memoranda at issue were not the final disposition of the case, because a decision was subsequently made to prosecute and the prosecution did in fact occur. Thus, the rationale set forth with respect to the memoranda constituting final opinions in *NLRB* is inapplicable here.

Plaintiff's reliance on *Taxation With Representation Fund v. IRS*, 646 F.2d 666 (D.C.Cir.1981) is equally misplaced. That case involved the policy-making function of an agency, not the internal decision-making process of an agency regarding a specific criminal prosecution. The General Counsel's Memoranda, Technical Memoranda, and Actions on Decisions at issue in *Taxation With Representation* were final opinions, final decisions, and documents which explained these decisions, or regulations which were already determined by the agency. *Id.* at 681. Many of these documents were indexed, published internally, and relied upon by the agency for future decisions.[5] The prosecution memoranda at issue in this case share none of these characteristics.

Here it is undisputed that both the IRS and the United States Attorneys' Office had already recommended prosecution, while the line attorney, reviewer, and Chief of the Criminal Section of the Tax Division recommended against prosecution. Defendant claims that the ultimate authority for making the final decision regarding prosecution in this type of "exceptional case" was vested in the office of the Assistant Attorney General of the Tax Di-

vision, not the Chief of the Criminal Section of that Division. Third Ferrel Decl. at ¶ 4 and Exhibit A thereto at 2 (August 9, 1984 letter to Senator Hatch). This case was exceptional, according to defendant, because it was a high profile case and because there was an initial conflict between the IRS's and the United States Attorney's recommendations and the recommendations of the Tax Division attorneys assigned to the case. Third Ferrel Decl. ¶ 4. Tax Division Directive No. 37 ¶ 4(a) and Tax Division Directive No. 15 ¶¶ 4(a) and (d) authorize the Assistant Attorney General to make final decisions in exceptional cases.

While the Court recognizes that Directive 37, which supersedes Directive 15, permits the Criminal Chief to make a final decision regarding prosecution in certain instances, the Court notes that there is nothing in the delegation directives that precludes the Chief of the Tax Division's Criminal Section from forwarding sensitive cases to the Assistant Attorney General of the Division for a final decision. Directive No. 37 merely identifies circumstances in which the Assistant Attorney General has authorized his subordinates to make decisions on behalf of the agency; there is no prohibition against the Assistant Attorney General making final decisions himself. Moreover, it is well established that the head of an agency retains the authority to make final decisions for the agency even if he or she delegates the authority to make these decisions to his or her subordinates. *See, e.g., Knight v. United Land Ass'n*, 142 U.S. 161, 176–82, 12 S.Ct. 258, 35 L.Ed. 974 (1891) ("As a general proposition of administrative agency law, the head of an administrative agency has the power to review and revise acts of subordinates where, as here, the powers in question are

**5.** These documents were found to be a body of "secret law" routinely relied upon by the

agency and therefore not exempt from disclosure under the FOIA. *Id.* at 679.

vested in the subordinate under the supervision and direction of the superior or the power to administer is vested in the superior."); *see also. Morrow v. Clayton*, 326 F.2d 36, 45–46 (10th Cir.1963) (holding that the Secretary of Agriculture and his subordinates had the authority to review and change lower subordinates' actions, despite the delegation of authority over the subject matter to the lower subordinates). Thus, the fact that a subordinate was authorized to take certain actions does not deprive his superiors of their authority to make final decisions for the agency in certain cases.[6] Therefore, there is no basis for plaintiff's claim that the Assistant Attorney General's prosecution decision could not have been the "final decision" in this case because he lacked the authority to make such a decision.

 All evidence in the record supports the conclusion that the Assistant Attorney General made the final decision regarding prosecution in this case. *See* Decls. of Krysa and Ferrel. In fact, the Hatch Letter explicitly states that the case was forwarded by the Criminal Chief to the Deputy Assistant Attorney General for a final decision. *See* Hatch Letter (Exhibit A to Def. Reply) at 2–4. Plaintiff has offered no evidence to rebut the contention that the Assistant Attorney General made the final decision here. Accordingly, the Court finds that the final agency decision in this case was made by Andrews, Acting Deputy Assistant Attorney General for the Tax Division.[7]

Since the Court has now determined that the final agency decision in this case was that of the Acting Deputy Assistant Attorney General, all documents prepared by the agency with regard to this prosecution prior to the final decision of Andrews to authorize the prosecution of Reverend Moon and Mr. Kamiyama would be considered predecisional and allowing release of these memoranda would violate the intent of the deliberative process privilege. In *Firestone Tire & Rubber Co. v. Dep't of Justice*, 81–2 U.S. Tax Cas. (CCH) ¶ 9670, 1981 WL 1870 (D.D.C.1981) (holding that memoranda prepared by various levels of staff lawyers within the Department of Justice, Tax Division and by an Assistant United States Attorney were exempt from disclosure under FOIA Exemption 5), this court explained:

> Taking the documents as a whole, it is apparent that their disclosure would unquestionably chill the kind of frank prosecutorial evaluations of tax cases in the future that these memoranda evince ... Prevention of such "demoralization" of the litigative process is a critical function of the traditional attorney work-product privilege ... Congress intended that documents like these, which amount to opinion work-product, be protected from disclosure under FOIA.

*Id.* at *2. Therefore, all decisions made prior to the Acting Deputy Assistant Attorney General's decision in this case would be covered by the deliberative process privilege.

Plaintiff's argument that these prosecution memoranda are not subject to the deliberative process and attorney work-product privileges because they recommend declining prosecution is unsupported by fact or law. None of the prosecution memoranda at issue here "preclude litigation," as plaintiff contends, nor do they

---

6. Pursuant to 28 C.F.R. § 0.70, as cited in Directive No. 37, the Assistant Attorney General for the Tax Division is responsible for the handling, supervision and conduct of these types of criminal tax prosecutions.

7. Since the interpretation of agency law and these directives is a legal issue for the Court to determine, the Court finds no basis for the plaintiff's request for further discovery on this issue.

constitute a body of secret law. The fact that these memoranda must have been recommendations flowing up the chain of command to the ultimate decision-maker as part of the agency's decision-making process is supported by the fact that the Acting Deputy Assistant Attorney General declined to follow these recommendations and instead authorized prosecution. Moreover, it is well established that documents created by an attorney in the course of an investigation prior to a decision to litigate may be protected by Exemption 5. *See SafeCard Serv's, Inc. v. Securities and Exchange Comm'n,* 926 F.2d 1197, 1202 (D.C.Cir.1991); *see also A. Michael's Piano, Inc. v. Federal Trade Comm'n,* 18 F.3d 138, 146 (2d Cir.1994). "Where an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product." *SafeCard Serv's, Inc.,* 18 F.3d at 146. Similarly, in *A. Michael's Piano, Inc.,* the court held that Exemption 5 applies even when a staff attorney is considering or recommending closing an investigation in-

stead of litigating a case. *Id.* at 146. "Here the FTC investigation was not closed at the time the documents at issue were created, and the fact that staff members may have thought that litigation might not ever occur . does not take the documents out of the scope [of Exemption 5]." *Id.*

■ The prosecution memoranda at issue here were created as an integral part of the Tax Division's investigation and its decision-making process with regard to whether or not to prosecute Reverend Moon and Mr. Kamiyama. These documents contain recommendations of the IRS, the United States Attorney and the Tax Division; review notes; and letters and memoranda concerning the handling of the case. Ferrel Decl. ¶ 15. This material is precisely the type of information universally held to be attorney work-product in the context of civil discovery.[8] *Tax Analysts,* 117 F.3d at 620 (attorney work-product privilege protects "any part" of memoranda prepared in anticipation of litigation).

In addition, as explained in the Hatch letter, the concern regarding release of

---

8. Plaintiff's argument that documents pertaining to Mr. Kamiyama's grand jury testimony should be released because Mr. Kamiyama is entitled to information derived from his own testimony is without merit. The only document withheld by defendant that makes a specific reference to Mr. Kamiyama's grand jury testimony is Document 6, pages 5 and 6. Third Ferrel Decl. ¶ 6. However, this information was properly withheld based upon Exemption 5 and the deliberative process and attorney work-product privileges, because it is cited by Assistant U.S. Attorney Martin Flumenbaum to support his supplemental prosecution recommendation. *See id.* Plaintiff has failed to meet his burden of establishing that this material is in the "public domain." *See Davis v. Dept. of Justice,* 968 F.2d 1276, 1279 (D.C.Cir.1992) (recognizing in dicta that evidence admitted at trial does not necessarily make it part of the public domain and that

merely because material has been made public at one time does not necessarily place it within the public domain). The bare assertion that portions of the grand jury materials may have been used as exhibits at trial or that plaintiff received a copy of Mr. Kamiyama's grand jury testimony is insufficient to establish that this information is in the public domain. Plaintiff has failed to establish specifically which portions of this exempt information were disclosed at trial or how release of a transcript via discovery or through representation of Mr. Kamiyama puts this material in the public domain. *See Davis,* 968 F.2d at 1279 (holding that because plaintiff could not establish which portions of the tapes had been played in court, plaintiff failed to meet his burden). Since plaintiff has not adequately met his burden, this information remains exempt.

these deliberative documents in this case is great in light of the fact that the preliminary recommendations of the attorneys were based upon materials which were found by the courts to be false [9] and which were submitted to the Tax Division for the purpose of improperly influencing the agency's deliberative process. Third Ferrel Decl., Exhibit A. Thus, not only do these memoranda and the information contained therein fail to reflect the final views of these attorneys based on the true facts, these memoranda have no probative value to the public since they are based on misrepresentations. For these reasons, these documents and portions of documents were properly withheld under the deliberative process and work-product privileges.[10]

### 2. The Hatch Letter [11]

Select portions of two paragraphs of the August 9, 1984 letter from Robert A. McConnell to Senator Orin G. Hatch have been redacted pursuant to Exemption 5, because defendant claims that they contain information protected by the deliberative process and attorney work-product privi-

leges. Second Ferrel Decl. ¶ 5 and Exhibit 1 thereto.

■ Plaintiff claims that this letter is not covered by Exemption 5 because it was prepared after the *Moon* case had concluded. However, the fact that the final decision to prosecute was made and the litigation was concluded prior to the date of the Hatch letter does not remove this information from Exemption 5 and the attorney work-product privilege. *Federal Trade Comm'n v. Grolier*, 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983) (holding attorney work-product was exempt from disclosure under FOIA Exemption 5 even after the case was dismissed and litigation terminated by the FTC). In fact, the Supreme Court has held that "under Exemption 5, attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared." *Id.* at 28, 103 S.Ct. 2209.

■ Plaintiff also argues that defendant has waived its deliberative process or attorney work-product privileges with respect to the information redacted from this letter, because the information was re-

---

**9.** Mr. Kamiyama was convicted of perjury for his grand jury testimony.

**10.** The Court finds that defendant has met its burden of establishing that all non-exempt portions of the documents at issue have been released to plaintiff. *See* Ferrel Decl.; Index. The First Declaration of Ferrel clearly establishes that he was unable to segregate for release much of the factual material from the deliberative portions of these documents, because (1) the factual material was intertwined with deliberative material; (2) most of the factual material was otherwise exempt from disclosure pursuant to Fed.R.Crim.P. 6(e) and the work-product privilege; and (3) the facts contained within these documents were selected by authors from a larger body of factual material and disclosing these facts would thus reveal the author's deliberative process. Ferrel Decl. ¶ 19. Accordingly, the withheld portions of these documents are exempt from release pursuant to Exemption 5 in conjunc-

tion with the deliberative process and attorney work-product privileges.

**11.** Defendant claims that plaintiff did not exhaust his administrative remedies with regard to this letter. Def. Mot. at 20. Plaintiff, on the other hand, contends that this letter fell within his original FOIA request and thus that he has exhausted his administrative remedies. Pl. Opp. at 30. Since plaintiff later filed a separate FOIA request specifically requesting this letter and since defendant has responded to the request by producing the letter almost in its entirety, the Court finds it unnecessary to resolve the issue of whether or not the plaintiff exhausted his administrative remedies. Instead, the Court will consider the letter and defendant's discussion of the reasons for withholding select portions in order to determine whether these redacted portions were properly withheld pursuant to Exemption 5.

leased to a third party Congressman. However, this Circuit has explicitly held that a document otherwise covered by the deliberative process privilege does not lose this status merely because it was disclosed to a member of Congress without an explicit warning of its confidential status. *Murphy v. Dept. of Army, et al.*, 613 F.2d 1151, 1159 (D.C.Cir.1979); *see also Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) (rejecting requestor's argument that information protected by FOIA Exemption 7 is not exempt when summarized in a new document not created for law enforcement purposes).

## C. Exemption 7(C)

The defendant is withholding portions of document 1 pursuant to FOIA subsection (b)(7)(C). Subsection (b)(7)(C) exempts from disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

 To fall within the scope of FOIA Exemption 7(C), the records must have been compiled for law enforcement purposes. *See Church of Scientology Int'l v. IRS*, 995 F.2d 916 (9th Cir.1993). To determine whether records were compiled for law enforcement purposes, the Court must examine the agency itself to determine whether the agency may exercise a law enforcement function. *Id.* at 919. If the agency has the requisite law enforcement mandate, the court will apply a balancing test to determine if the public interest in disclosure outweighs the individual privacy interests that would suffer from disclosure. *Id.* at 919–20.

 It is well established that the IRS has the requisite law enforcement purpose to fall within the scope of FOIA Exemption 7(C). *See, e.g. Lewis v. IRS*, 823 F.2d 375, 379 (9th Cir.1987); *Church of Scientology*, 995 F.2d at 919. Moreover, in this case, the Court is satisfied that the privacy interests of the grand jury witnesses greatly outweigh the public interest in disclosure.[12] *See U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 780, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy). The information withheld pursuant to subsection (b)(7)(C) consists of records created during the course of a grand jury investigation to explore the allegations of possible violations of federal law. Ferrel Decl. ¶ 20. Information was withheld pertaining to the identities of certain grand jury witnesses. *Id.* The privacy interests of these individuals clearly outweighs any public interest in the information. Therefore, this material was properly withheld pursuant to Exemption 7(C).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant defendant's Motion for Summary Judgment and this case will be dismissed with prejudice. An order will accompany this opinion.

---

12. The information initially withheld pertaining to Reverend Moon's history and background as well as information obtained from his federal tax returns has now been released pursuant to the power of attorney provided to plaintiff. *See* Def. Supp. Mem. at 3. This includes portions of documents 1, 2, and 10. *Id.*